UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KATHERINE ELIZABETH HAMMONDS        )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        CASE NO. 2:10-cv-103-TFM
                                    )        [wo]
HYUNDAI MOTOR MANUFACTURING         )
ALABAMA, LLC,                       )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION

This action is assigned to the undersigned magistrate judge to conduct all proceedings and order entry of judgment by consent of all the parties (Docs. 9-10, filed March 25, 2010) and 28 U.S.C. § 636(c).  Pending before the Court is the *Motion for Summary Judgment of Defendant Hyundai Motor Manufacturing Alabama, LLC* (Doc. 16, filed November 15, 2010).  Upon consideration of the motion, the Court finds it is due to be **GRANTED**.

## I.  JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. § 2000e-5 (Title VII).  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.   PARTIES AND NATURE OF THE CASE

The underlying facts of this case are necessarily viewed in favor of the nonmovant plaintiff.  Plaintiff Katherine Elizabeth Hammonds ("Hammonds" or "Plaintiff") is a former employee of Defendant Hyundai Motor Manufacturing Alabama, LLC ("Hyundai" or "Defendant").  She started working for Hyundai as a Process Engineer in the Paint Shop in August 2007.  *See* Plaintiff's Response in Opposition to Summary Judgment, Doc. 26 at p. 2.[1]  In March 2008, Hammonds made an internal complaint regarding allegations of sexual harassment by a co-worker on at least 2 separate occasions - one in November 2007 and another in March 2008.  *Id*. at p. 3-4.  Hyundai initiated an investigation in which Hammonds participated  by meeting with the investigator and providing statements.  *Id*. at p. 4.  Shortly after the investigation, the alleged harrasser left Hyundai's employment.  *Id*.

On July 8, 2008,[2] Hammonds turned in her resignation and two week notice because she planned to move to Texas to be with her fiancé.  *See* Doc. 18 at p. 6; Doc. 26 at p. 6.  Her final day would be July 22, 2008.  *Id*.  On July 21, 2008, Hammonds officially told Hyundai

---

[1]     When referring to page numbers in documents such as the Plaintiff's and Defendant's briefs, the Court is referencing the page number as provided in the court's docket and not the page numbers at the bottom of the brief.  For example, in this citation, the docket page number is page 2 whereas the number at the bottom of Plaintiff's brief is page 1.

[2]     Hammonds refers to the date as Wednesday, July 8, 2009, but then refers to her date of termination as Wednesday, July 22, 2008.  *See* Doc. 26 at p. 6.  The Court notes that the reference to 2009 is obviously a typographical error as the evidence clearly establishes that Hammonds was terminated in 2008.  *See* Doc. 1 at ¶ 15.  The Court also takes judicial notice that July 8, 2008 and July 22, 2008 both fall on a Tuesday and not Wednesday as referenced in Plaintiff's brief.

that she wanted to rescind her resignation letter and remain in her position with the company. *See* Doc. 18 at p. 6; Doc. 26 at p. 7.  Hyundai ultimately chose not to allow Hammonds to rescind the resignation and her exit interview occurred on July 22, 2008.  *See* Doc. 26 at p. 11.

Subsequently, Hammonds began work with MPW, a Hyundai contractor, in October 2008.  *Id*. at p. 13.  She would work at the Hyundai facility as a contract employee.  *Id*.; Doc. 18 at p. 7.  On October 7, 2008, Hammonds went to Hyundai to begin her work as a MPW contractor, but was ultimately told that she could not be issued a security badge.  *Id*.  After informing MPW of the security badge problem, she was told she could not work for them because she could not work at the Hyundai facility as a contractor.  *See* Doc. 26 at p. 15.

Hammonds initiated her suit on February 8, 2010 when she filed her complaint against Hyundai.  *See* Doc. 1.  She asserted claims for sexual discrimination in violation of Title VII (Count I), retaliation in violation of Title VII (Count II), and intentional interference with business relations in violation of Alabama state law (Count III).  *Id*.  Within each count, Plaintiff asserted multiple basis for her claims.  *Id*.  Hyundai timely filed its answer.  *See* Doc. 4.

On November 15, 2010, Hyundai filed its motion for summary judgment along with its brief in support and evidentiary attachments.  *See* Docs. 16-18.  After receiving an extension of time, Plaintiff filed her response in opposition and evidentiary support on January 28, 2011.  *See* Docs. 26-27.  Hyundai filed a reply brief on February 4, 2011.  *See*

Doc. 28.  Thus, the motion for summary judgment is fully briefed and ripe for review.

### III.   SUMMARY JUDGMENT STANDARD

A party in a lawsuit may move a court to enter summary judgment before trial.  FED. R. CIV. P. 56(a) and (b).  Summary judgment is appropriate when the moving party establishes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a);[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1231-32 (11th Cir. 2011).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 2011 WL 1490358 (11th Cir. 2011) (unpublished opinion quoting *Anderson*).  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249, 106 S.Ct. at 2511.  Only disputes about the material facts will preclude the granting of summary judgment.  *Id.*

---

[3]    Effective December 1, 2010 Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  FED. R. CIV. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word-genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  The Advisory Committee was careful to note that the changes "will not affect the continuing development of the decisional law construing and applying these phrases."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.  *Id.*

The movant bears the initial burden of proof. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Moore*, 637 F.3d at 1232, 2011 WL 1316172 at *7 (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The court must view the facts and draw all reasonable inference in favor of the nonmoving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs, Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1265 (11th Cir. 2007) ("We view the evidence and all factual inferences therefrom in the light most favorable to

the party opposing the motion.").   However, to avoid summary judgment, the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted).

Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the

motion for summary judgment are likewise insufficient to defeat a proper motion for

summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177,

111 L.Ed.2d 695 (1990).   "Speculation does not create a *genuine* issue of fact." *Cordoba v.

Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in

original).   If the evidence is merely colorable or is not significantly probative, summary

judgment may be granted.   *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations

omitted).   In short, summary judgment is proper after adequate time for discovery and upon

motion against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case.   *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

## IV.   DISCUSSION AND ANALYSIS

### A.   Conceded Claims

At the outset, "Plaintiff concedes her Title VII sex discrimination claims as to being

subjected to unwarranted discipline and stricter scrutiny and as to not being allowed to return

on site at [the Hyundai facility]."   *See* Doc. 26 at p. 1, n. 1.   As such, summary judgment is

granted as to those claims.   The four claims remaining for the Court's review are the Title

VII Sexual Discrimination claim for termination,[4] Title VII Retaliation claim for termination,[5] Title VII Retaliation claim for non-admittance to the Hyundai facility,[6] and the state law claim for intentional interference with business relations.[7]

**B.     Discrimination - Termination**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or statistical proof."  *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citations omitted).

Hammonds presents no statistical evidence nor does she argue that there is direct evidence of discrimination.  Direct evidence of discrimination is "evidence that, if believed, proves the existence of a fact without inference or presumption."  *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)).  Thus, "only the most blatant remarks, whose intent could

---

[4]      *See* Response in Opposition to Summary Judgment, Doc. 26 at p. 20-27.

[5]      *Id*. at p. 27-31.

[6]      *Id*. at p. 32-44

[7]      *Id*. at p. 45-48

mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (quoting *Wilson*, 376 F.3d at 1086). Therefore, Hammonds must prove her discrimination claim by relying on circumstantial evidence.

Courts evaluate the sufficiency of circumstantial claims using the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973). A plaintiff must show an inference of discriminatory intent, so she carries the initial burden of establishing a *prima facie* case of discrimination. *Rioux*, 520 F.3d at 1275; *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). "Presenting a prima facie case is not onerous as it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Rioux*, 520 F.3d at 1275. (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Next, should the plaintiff establish a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reasons for the employment action. *Brown*, 597 F.3d at 1174. The defendant "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *accord Alvarez*, 610 F.3d at 1265. Rather, it is merely a burden of production. If the defendant presents a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to produce evidence that the defendant's proffered reason is a pretext for discrimination. *Alvarez*, 610 F.3d at 1264. "The

focused inquiry in the last step requires the plaintiff to demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Rioux*, 520 F.3d at 1275 (citation and internal quotations omitted).  In other words, at the summary judgment stage, the plaintiff may survive by providing a prima facie case and evidence sufficient for a jury to find that the employer's proffered explanation is false.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).  Moreover, despite the shifts in the burden of production, the ultimate burden of persuasion remains on the plaintiff to show that the defendant intentionally discriminated against her.  *Alvarez*, 610 F.3d at 1264. (citations omitted).

Hammonds alleges that she was terminated from her employment, at least in part, because of her gender.  Under the *McDonnell Douglas* framework, a plaintiff may establish a prima facie case by showing that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside of her protected class or was treated less favorably than a similarly-situated individual outside of her protected class.  *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).  Undoubtedly, Hammonds is a member of a protected class (female) and that she was qualified for her position.  As such, only elements 3 and 4 are in dispute.

Hyundai asserts that it is not an adverse employment action for an employer to accept

an employee's resignation and then refusing to permit the employee to rescind the resignation.  Hammonds asserts there is a genuine issue of material fact as to whether or not she suffered an adverse employment action - i.e. specifically termination.   The facts are undisputed that Hammonds submitted her resignation on July 8, 2008 with her last day as July 22, 2008.  *See* Doc. 18 at p. 16; Doc. 26 at p. 6.  On July 21, 2008, Hammonds officially tried to rescind her resignation.  *See* Doc. 18 at p. 18; Doc. 26 at p. 7.  Thus, the Court is faced with the question of whether refusal to permit Hammonds to rescind her resignation constitutes an adverse action.

"An employee's resignation is not an adverse employment action, absent evidence that it is the product of a constructive discharge." *Rutledge v. SunTrust Bank*, Civ. Act. No. 8:05-cv-536-T27TGW, 2007 WL 604966, *6 (M.D. Fla. 2007), *aff'd* 2007 WL 604966 (11th Cir. 2008) (citing *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 n. 2 (11th Cir. 1997)).  To assert a successful claim of constructive discharge, a plaintiff must show working conditions "so intolerable that a reasonable person in her position would have been compelled to resign."  *Poole*, 129 F.3d at 553 (quoting *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1433-35 (11th Cir. 1997)).  So long as the resignation was voluntary and not a result of coercion or duress, there is no constructive discharge and the failure to accept rescission of a voluntary resignation is not an adverse employment action.  *MacLean v. City of St. Petersburg*, 194 F.Supp.2d 1290, 1300 (M.D. Fla. 2002).

Hammonds does not assert working conditions so intolerable that she was forced to

resign.  Rather, Hammonds sought to stay with the company by rescinding her resignation.

*See, e.g., Trinidad v. N.Y. City Dep't of Corr.*, 423 F.Supp.2d 151, 168 (S.D.N.Y. 2006)

(noting that employee's request for reinstatement established that working conditions were

not intolerable).  As such, there is no claim for constructive discharge.  Nor is there any

allegation that Hammonds was coerced or under duress when she submitted her resignation.

Rather the facts are clear that she submitted her resignation because she intended to move

to Texas to be with her future husband.  The Court joins with other courts which hold that

the refusal to allow rescission of a voluntary resignation does not constitute an adverse

action.[8]  As a result, Hammonds cannot show she was subjected to an adverse action and fails

to establish a *prima facie* case and the Court need not look to Element 4.  Further, even if

Hammonds had established a *prima facie* case, she did not rebut Hyundai's proffered reason

as pretext.

---

[8]     *See, e.g. Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447-50 (6th Cir. 1999) (An effective resignation does not constitute an adverse action.  "Plaintiff failed to establish that he suffered an adverse employment decision because he voluntarily resigned."); *Trinidad*, 423 F.Supp.2d at 168 (Failure to reinstate Plaintiff shortly after her resignation does not constitute adverse action); *MacLean*, 194 F.Supp.2d at 1300; *Jones v. Butler Metro. Hous. Auth.*, 40 Fed. Appx. 131, 137 (6th Cir. 2002) (Finding Defendant was under no obligation to allow Plaintiff to rescind her voluntary resignation and there was no adverse action); *Wilkerson v. Springfield Pub. Sch. Dist. No. 186*, 40 Fed. 260, 263 (7th Cir. 2002) (Defendant was under no duty to allow Plaintiff to rescind his resignation after he submitted his signed resignation and district court correctly determined that the defendant never took an adverse action against the plaintiff); *Rutledge*, 2007 WL 604966 at *6 (No adverse action when Plaintiff resigned even though she later attempted to rescind resignation); *Schofield v. Metro. Life. Ins. Co.*, Civ. Act. No. , 2006 WL 2660704, *8-9 (M.D. Pa. 2006), *aff'd* 252 Fed. Appx. 500 (3d Cir. 2007) ("Failure to accept a previous employee's rescission of his voluntary resignation is not an adverse employment action for the simple reason that the employment relationship has ended.").

C.      **Retaliation - Title VII**

i.      **Termination**

The *McDonnell Douglas* burden-shifting analysis applies in cases of retaliation relying on circumstantial evidence, such as the instant case. *Brown*, 597 F.3d at 1182 (citing *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009)). Therefore, the plaintiff must establish a *prima facie* case which requires a showing that "(1) [she] engaged in statutorily protected activity; (2) [she] suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Dixon*, 627 F.3d at 856 (citations omitted); *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)). These elements create a presumption that the adverse action was intended as retaliation. *Bryant*, 575 F.3d at 1308. The burden of production then shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse action. *Id*. "After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions." *Brown*, 597 F.3d at 1181-82 (quoting *Bryant*, 575 F.3d at 1307-08).

Title VII recognizes two forms of statutorily-protected conduct. An employee is protected from retaliation and discrimination if (1) "[she] has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause) or (2) "[she] has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this subchapter" (the participation clause).  42 U.S.C. § 2000e-3(a).  The parties never specifically address this information, but there is no dispute among the parties as to the first element of the *prima facie* case - that Hammonds engaged in statutorily protected activity - when she complained of sexual harassment in March 2008 and then participated in the investigation.

The disputed elements of the *prima facie* case are elements 2 and 3.  Turning to element 2, the Court must look to whether Hammonds was suffered an adverse employment action.  In the context of a retaliation claim, the definition of adverse employment action is much broader than in discrimination claims.  A materially adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006); *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008).  There's no question that Hammonds' employment ended with Hyundai - though it may have started because of her resignation, it ended because Hyundai did not permit her to rescind it.  As such, for the purposes of this analysis the Court will assume that element 2 is satisfied at the broader *Burlington* standard.[9]

---

[9]    The Court still has some doubt that element 2 is satisfied, but found few retaliation cases dealing with resignation rescission post-*Burlington*.  *See, e.g., Schofield v. Metropolitan Life, Ins. Co.*, Civ. Act. No. 3:03-cv-357, 2006 WL 2660704, *9 (M.D. Pa. 2006) (opinion issued 3 months after *Burlington* which held "Failure to accept a previous employee's rescission of his voluntary resignation is not an adverse employment action for the simple reason that the employment relationship has ended.").  Consequently, the Court errs on the side of caution under the more lenient *Burlington* standard and will assume, without deciding, that element 2 is met.

The Court now turns to element 3 - i.e. the causal connection between the March 2008 complaint of sexual harassment and the refusal to permit Hammonds to rescind her July 8, 2009 resignation. "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798-99 (11th Cir. 2000)).   However, mere temporal proximity, without more, must be "very close" and a three to four month disparity between the statutorily protected expression and the adverse employment action is not enough. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (citations omitted); *see also Thomas*, 506 F.3d at 1364 (citing *Breeden*).   The case involving Hammonds and Hyundai is exactly that time frame.   Hammonds made her sexual harassment complaint and participated in the investigation in March 2008.   Defendant's refusal to allow Hammonds to rescind her resignation occurred in July 2008, almost four months later.   Therefore, that period, without more, does not rise to the level of "very close." *Thomas*, 506 F.3d at 1364.   Hammonds relies solely on the temporal proximity argument. She attempts to bridge the 3-4 month time gap by claiming that she "complained to her supervisor, Fix, that she was not being allowed to stay with [Hyundai] as retaliation because of the prior incident of sexual harassment." *See* Doc. 26 at p. 31.   However, the Court cannot find that this is a new statutorily protected complaint, but rather a mere reference to the past. To conclude otherwise would open the door to last-ditch efforts by employees to avoid

terminations by merely making a desperate claim of harassment or discrimination.  Rather, the statutorily protected activity at issue in this case is the original complaint of harassment in March 2008, not her last minute assertions the morning of her exit interview.  Thus, Hammonds cannot establish a *prima facie* case of retaliation and "the complaint of retaliation fails as a matter of law." *Thomas*, 506 F.3d at 1364 (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)).

Even if Hammonds had established a prima facie case, she fails to rebut the legitimate, nondiscriminatory reason proffered by Hyundai.  Specifically, Hyundai chose Tony Smith to fill the upcoming vacancy prior to Hammonds' attempt to rescind her resignation.  "A legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation or discrimination." *Worley v. City of Lilburn*, 408 Fed. Appx. 248, 251 (11th Cir. 2011) (unpublished) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).  Plaintiff cannot merely "recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer" but rather "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).  Conclusory allegations or unsupported assertions, without more, "are not sufficient to raise an inference of pretext." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996) (citations omitted); *see also Worley*, 408

Fed. Appx. at 251 (quoting *Mayfield*).  Hammonds does nothing to rebut Hyundai's reason.

Thus, the retaliation claim for termination fails.

### ii.    Refusal to issue security badge for Hyundai facility

A plaintiff can establish a retaliation claim through either direct or circumstantial

evidence (i.e. the *McDonnell-Douglas* analysis).  *Damon v. Fleming Supermarkets of*

*Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  As previously noted, direct evidence

of discrimination is "evidence that, if believed, proves the existence of a fact without

inference or presumption."  *Dixon*, 627 F.3d at 854.  Direct evidence is "evidence that

reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation

complained of by the employee.'"  *Van Voorhis v. Hillsborough County Bd. of County*

*Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (quoting *Wilson*, 376 F.3d at 1086).  "If the

plaintiff is successful in carrying this initial burden, the trier of fact is required to consider

all of the evidence and determine whether a protected personal characteristic was the cause

of an adverse employment decision *vel non*."  *Dickey v. Dollar Gen. Corp.*, 351 Fed. Appx.

389, 392 (11th Cir. 2009) (unpublished) (citations omitted).  "Where the non-movant

presents direct evidence that, if believed by the jury, would be sufficient to win at trial,

summary judgment is not appropriate even where the movant presents conflicting evidence."

*Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997).

Hammonds asserts she has established the prima facie case through direct evidence

of retaliatory intent.  Specifically, she states that "at the time Hammonds had her security

badge revoked and was escorted off [Hyundai] property, Schmidt had a conversation with Warner questioning why Hammonds was not being allowed on site.  Warner told Schmidt that Hammonds 'had a very hostile work exit interview and she said bad things about Hyundai,' and that 'it would be to our best interests and not to have any conflicts if we let her not come back on site.'"  *See* Doc. 26 at p. 35-36 (citing Doc. 27, Exhibit D - Schmidt depo 63:19-64:2; 66:6).  The full deposition statement reads as "[w]hen Wendy Warner called me, she said that we didn't want to give Ms. Hammonds a badge.  I said, why?  She said, well, she was let go.  I said, well, Ms. Hammonds resigned, Ms. Hammonds wasn't terminated.  She said, yes, but she had a very hostile work exit interview and she said bad things about Hyundai and also bad things about you and it would be to our best interests and not to have any conflicts if we let her not come back on site.  I said, well, your role is HR, and you make that decision.  I don't have a problem with it either way."  *See* Doc. 27, Ex. D at 63:19-64:4.

"Under Eleventh Circuit precedent, only the most blatant remarks, whose intent could mean nothing other than to retaliate on the basis of an impermissible factor constitute direct evidence of retaliation." *Masso v. Miami-Dade County*, 465 F.Supp.2d 1260, 1264 (S.D. Fla. 2006) (internal quotation and citation omitted).  The Court cannot find that the above statement constitutes direct evidence because it could be interpreted in a variety of ways. Further, it requires the inferential leap that the statement about the exit interview was actually referring to Hammonds' complaints of retaliation during the exit interview and not simply

her behavior and attitude during the exit interview. *Cf. Dixon*, 627 F.3d at 854 (Direct evidence of discrimination is "evidence that, if believed, proves the existence of a fact without inference or presumption.") (emphasis added). As such, Hammonds fails to establish a *prima facie* case of retaliation by direct evidence.

The Court now turns to whether Hammonds establishes a case of retaliation by circumstantial evidence using the *McDonnell Douglas* burden shifting analysis. The elements at issue are whether Hammonds suffered a materially adverse action (element 2) and that there was a causal connection between the protected activity and the adverse action (element 3). To establish element 2, the employee must show that "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S.Ct. at 2415. Here the action referred to is the non-issuance of a security badge. Viewing the facts in the light most favorable to Hammonds, as a result of Hyundai's refusal to issue Hammonds a security badge to work at its facility, she was no longer able to work at the local facilities where MPW (the contractor) had positions available. Therefore, the Court finds that element 2 is met.

As to element 3 - causal connection - Hammonds again relies upon temporal proximity. The revocation of Hammonds' contractor security clearance occurred on October 7, 2008 – over seven months after her sexual harassment complaint. Again, Hammonds attempts to shorten the time frame to "less than three months" by linking it to her complaints of retaliation at her exit interview. As discussed previously, Hammonds cannot simply create

a new statutorily protected activity by raising conclusory allegations of retaliation during what was obviously a heated exit interview.  Rather, the Court must look to the origination of the statutorily protected activity - that is, the complaint of sexual harassment in March 2008 and the investigation resulting therefrom.  Therefore, Hammonds fails to establish element 3.

Again, even if the Court assumes Hammonds could successfully establish a *prima facie* case, she still fails to satisfy the third prong of the *McDonnell Douglas* framework.  Specifically, she fails to rebut the legitimate, nondiscriminatory reason proferred by Hyundai - that is, a policy to refuse security badges to former employees.  Hammonds attempts to rebut the legitimate nondiscriminatory reason by offering several comparator former employees who were issued security badges.  However, merely showing that some former employees have been issued security badges is not sufficient.  "[A] reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason."  *Saunders v. Emory Healthcare, Inc.*, 360 Fed. Appx. 110, 114-15 (11thCir. 2010), *cert. denied*, 131 S.Ct. 1473 (Feb. 22, 2011).  Hammonds does nothing to show how these comparators show that not only was the policy a false reason, but also that retaliation against her was the real reason for the denial of a security badge. *Cf. Delgado v. U.S. Dep't of Transp.*, 709 F.Supp.2d 1360, 1369 (S.D. Fla. 2010) ("[I]t is not sufficient for Plaintiff to arbitrarily point to a purported irregularity without suggesting that it had any improper discriminatory effects or that it was related to the Department's alleged discriminatory

animus.").  As the Eleventh Circuit has emphasized, an employer may take an employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1187 (11th Cir. 1984).  Hammonds presents nothing to this Court to show that her situation was motivated by discriminatory or retaliatory reasons.  Thus, her claim for retaliation as to the security badge also fails.

### iii.    Unwarranted discipline and stricter scrutiny

It is unclear whether Hammonds still attempts to maintain a retaliation claim based upon "being subjected to unwarranted discipline and stricter scrutiny."  *See* Doc. 1 at ¶ 65 ("As set out in detail above, thereafter the Defendant unlawfully retaliated against the Plaintiff in that she was subjected to unwarranted and stricter scrutiny than similarly situated employees."); Doc. 26 at p. 1 n. 1 ("Nor does Plaintiff concede her Title VII retaliation claims.").  However, as noted supra in Section IV(A), those claims were not discussed in the opposition brief.  Therefore, the Court finds that those claims not addressed have been abandoned.  *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations omitted) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Robinson v. Regions Fin Corp.*, 242 F.Supp.2d 1070, 1075 (M.D. Ala. 2003) (Where Plaintiff's opposition to motion for summary judgment addresses only some claims, the remainder were deemed abandoned); *see also Melton v. Nat'l Dairy LLC*, 705 F.Supp.2d

1303, 1317 (M.D. Ala. 2010) (citing *Resolution Trust* and *Robinson*); *Cf. Greenbriar, Ltd.*

*v. City of Alabaster*, 881 F.2d 1570, 1573 n. 6 (11th Cir. 1989) (mere passing reference to

issue is insufficient to preserve issue for appeal and the issue is deemed waived).

## D.      Intentional Interference with Business Relations

Under Alabama law, the elements of the tort of wrongful interference with a business

relationship are (1) the existence of a protectible business relationship; (2) of which the

defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant

intentionally interfered; and (5) damage.  *White Sands Group, L.L.C. v. PRS II, LLC*, 32

So.3d 5, 14 (Ala. 2009) (hereinafter "*White Sands II*");[10] *see also Edwards v. Prime, Inc.*, 602

F.3d 1276, 1302 (11th Cir. 2010).  Defendants, in their motion for summary judgment, rely

upon caselaw from the Alabama Supreme Court which was officially overruled by *White*

*Sands*.  Specifically, the  old element of "justification" was disposed of by the Alabama

Supreme Court in *White Sands II*.  Rather, justification is not an affirmative defense to be

plead and proven by the defendant.  *White Sands II*, 32 So.3d at 12-13.  Plaintiff is correct

in her assertion that the defendants analysis is flawed in that it relies upon the elements

delineated in cases stemming from *Gross v. Lowder Realty Better Homes & Gardens*, 494

So.2d 590, 597 (Ala. 1986) and its stated elements of wrongful interference with a business

relationship.  Defendant conveniently glosses over this argument in its reply.  *See* Doc. 28

---

[10]      The Court notes a previous case involving the same parties generally known as
*White Sands I.  See White Sands Group, L.L.C. v. PRS II, LLC*, 998 So.2d 1042 (Ala. 2008)
(frequently cited for the holding that "the absence of a valid contract is not fatal to [a] claim of
tortious interference with a business relationship."

at p. 26-29.  Rather, Hyundai continues to focus on old Alabama caselaw some of which was explicitly overruled by the Alabama Supreme Court.  *See White Sands II*, 32 So.3d at 14 (explicitly overruling cases  to the extent those cases list absence of justification as an element of the plaintiff's *prima facie* case).

However, despite the above, the Court still finds that Hammonds' state law claim for wrongful interference with a business relationship fails because she cannot meet element 3 which is that Defendant be a *stranger* to the relationship.  *See id*. ("In the process of defining the tort of wrongful interference with a business relationship, we deem it prudent to reiterate that one of the elements is that the defendant be a stranger to the relationship."); *see also Kirby's Spectrum Collision, Inc. v. Government Employees Ins. Co.*, 744 F.Supp.2d 1220, 1234 (S.D. Ala. 2010) (quoting *White Sands II* in that one element plaintiff must prove "is that the defendant be a stranger to the relationship.").  The Alabama Supreme Court has stated that "a defendant is a party in interest to a business or contractual relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Tom's Foods, Inc. v. Carn*, 896 So.2d 443, 454 (Ala. 2004) (quotation marks and citation omitted); *see also Edwards*, 602 F.3d at 1302 (quoting *Tom's Foods*).  Further, the Alabama Supreme Court cites to several cases reiterating the "stranger" requirement thus reaffirming the validity of those cases.  *See White Sands II*, 32 So.3d at 14 (citing *Tom's Foods*, 896 So.2d at 454; *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1143, 1153-56 (Ala. 2003); *Parsons v. Aaron*, 849 So.2d 932, 946-47 (Ala. 2002); and *BellSouth*

*Mobility, Inc. v. Cellulink, Inc.*, 814 So.2d 203, 212 (Ala. 2001)).  "A person with a direct economic interest in the contract is not a stranger to the contract.  Parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships."  *Edwards*, 602 F.3d at 1302 (quoting *Waddell*, 875 So.2d at 1157).

In the instant case, Hyundai is not a stranger to the business relationship between Hammonds and MPW.  MPW is a Hyundai contractor.  *See* Doc. 26 at p. 13.  When the defendant is an essential party to the allegedly injured business relationship, the defendant is a participant in that relationship instead of a stranger to it.  *See Tom's Foods*, 896 So.2d at 455 (holding that the defendant was not a stranger to the business relationship between the other two parties because the defendant "was involved in creating that relationship"); *Waddell*, 875 So.2d at 1157; *BellSouth Mobility*, 814 So.2d at 214 (holding that where a contract would not have been consummated without the participation of a certain party, that party is "anything but a stranger to the relationship"); *see also Edwards*, 602 F.3d at 1302 (citing and quoting *Tom's Foods*, *Waddell*, and *Bellsouth Mobility*).  Count III of Hammonds' Complaint fails to allege any facts indicating that Hyundai was a stranger to the business relationships with which it allegedly interfered.  *See* Doc. 1.  Further, Hyundai had obvious and direct economic interests in the contractual arrangement with MPW and further, has actual control over the contractors it permits on its facility.  Thus, Hyundai is an essential party to the business relationship alleged in Count III.  It was involved in creating those relationships and without it there would be no relationship.  *See, e.g., Edwards*, 602 F.3d at

1303 (citations omitted).

Based on the above, Hammonds cannot establish a *prima facie* case and consequently, her claim for intentional interference with business relations fails as a matter of law.

## V. CONCLUSION

Pursuant to the foregoing Memorandum Opinion, the Court grants the *Motion for Summary Judgment of Defendant Hyundai Motor Manufacturing Alabama, LLC* (Doc. 16). An appropriate judgment will be entered.

DONE this 28th day of June, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE